(163 App. Div. 121)

DZUBAK v. WEST SIDE FOUNDRY CO.    (No. 194–98.)

(Supreme Court, Appellate Division, Third Department.    July 1, 1914.)

1. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—ACTIONS—QUESTIONS FOR JURY.

Whether an iron molder who was scalded by molten iron, which he was carrying in a ladle when he stumbled, was guilty of contributory negligence, precluding recovery against the master, *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

2. MASTER AND SERVANT (§§ 101, 102*)—INJURIES TO SERVANT—DUTY TO FURNISH SAFE PLACE TO WORK.

A foundry company was bound to furnish an iron molder a reasonably safe place in which to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. §§ 101, 102.*]

3. APPEAL AND ERROR (§ 1177*)—DETERMINATION AND DISPOSITION OF CAUSE—REVERSAL—NECESSITY OF NEW TRIAL.

In reversing an order setting aside a verdict for plaintiff as excessive there was no necessity for a retrial, where the facts were practically conceded, and the trial court held that defendant's liability was properly submitted, as the verdict could be reinstated.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4597–4604, 4606–4610; Dec. Dig. § 1177.*]

Appeal from Trial Term, Albany County.

Action by George Dzubak against the West Side Foundry Company. From an order setting aside a verdict for plaintiff and granting a new trial, plaintiff appeals. Order reversed, and verdict restored.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

John F. and William H. Murray, of Troy (Andrew J. Nellis, of Albany, of counsel), for appellant.

Charles Irving Oliver, of Albany, for respondent.

LYON, J. The facts are practically conceded, the defendant resting its case at the close of the plaintiff's evidence with the statement, as indicated by the charge, that the calling of witnesses on behalf of the defense would be but a duplication of the testimony. The verdict was for the plaintiff, and the case comes before this court upon appeal from an order setting aside the verdict as against the evidence and as excessive, and granting a new trial.

[1] The action was brought under both the common law and the Employers' Liability Act (Consol. Laws, c. 31, §§ 200–204) to recover the damages sustained by the plaintiff, who was a molder in defend-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ant's foundry, by the severe burning of his foot and leg from the overturning of a ladle of molten iron, which he was carrying from the cupola in the old foundry, where the iron had been melted, to the bench in the new foundry upon which were the molds which he had made to receive the hot metal. Separating the two foundries was a brick wall through which a passageway for the use of the molders in carrying the molten iron had been made by removing a window in the wall, and taking out brick beneath the sill down to the level of the floor of the new foundry, which floor was about one-half the thickness of a brick, or a trifle more than an inch, higher than the floor of the old foundry. At each side of the passageway thus made was located the bench of a molder, and, in order to avoid removing the molder's bench upon the west side of the opening, this dividing wall, instead of being cut perpendicularly, as was the case with the east side, was cut obliquely from the base of the window to the floor. There was thus created a narrow passageway ten feet in height, and five feet in width down to a point about four feet from the floor, from which point the opening was narrowed by the oblique cutting to the width of between two and three feet at the floor. It was customary for the molders to complete their molds and to commence making their castings at about 3 o'clock in the afternoon, prior to which time the molders occupying the benches on the sides of this passageway, having used the space between their benches at the entrance to the passageway for storing sand used in making their molds, would level off any sand remaining in order to make practically uniform the grade from the floor of the old foundry to the floor of the new foundry; but at times the quantity of sand used in the grading was somewhat less than at other times. A number of the molders, including the plaintiff, having benches in the new foundry, forming in line, would pass with their empty ladles in hand from the new foundry through this passageway into the old foundry, and with filled ladles return to fill their molds. Upon the occasion of receiving the injuries complained of, which was about half past 4 o'clock in the afternoon of December 4, 1912, the plaintiff was returning through the old foundry, which was lighted by a large lamp, carrying a filled ladle, the bowl and handle of which were 54 inches long, holding the same out from his side, and as he testifies was moving somewhat rapidly, as was necessary in order that he might reach his molds before the metal had cooled, and was about to enter the passageway through the wall, being obliged to watch the ladle as he neared the passageway, when his foot struck a solid substance on the ground which he thinks was a brick in the old wall which did not yield, causing him to stumble and fall, and the melted iron to be poured upon his right leg and foot, burning him most severely. It is the plaintiff's contention that this passageway and the entrance thereto, graded from the floor of the old to the floor of the new foundry with molding sand, did not constitute a reasonably solid and safe way, and, having been continued for at least 2½ months prior to the time the plaintiff was injured, might properly be presumed to have been constructed and used with the knowledge of the defendant.

[2] The defendant was bound to furnish the plaintiff a reasonably

safe place in which to work, and the jury undoubtedly found that using easily displaced molding sand, instead of constructing a substantial pathway, was not the exercise of reasonable care upon the part of the defendant and was the cause of the plaintiff's falling. The question of contributory negligence was, under the evidence, fairly for the consideration of the jury, and we cannot say, in view of the serious and distressing nature of plaintiff's injuries, that the damages awarded were excessive.

[3] The material facts being practically conceded, as before stated, no occasion exists for a retrial of the action. The learned trial court, in his memorandum accompanying the granting of the order appealed from, held that the question as to the liability of the defendant was properly submitted to the jury, and declined to dismiss the complaint, but based the granting of his order upon the ground that the verdict seemed to be against the weight of evidence and was excessive in amount.

The order setting aside the verdict and granting a new trial should be reversed, with costs to appellant, and the verdict reinstated. All concur.